Just one more and we get to the fun one. Okay. Okay. The next argued case is number 18-1231, Premier Office Complex against the United States. Mr. Georgetown. Yes. Good morning, Your Honors. May it please the Court. My name is Peter Georgetown. I represent Premier Office Complex of Parma LLC, the appellant in this matter. You say on pages 28 and 29 of the Blue Brief the use of the word project in this context related to Amendment No. 1 is obviously the drafter's shorthand attempt to clarify that to the extent the project called for Level 3 security now calls for Level 2 security. How do you know that based on the use of the word project alone? Well, I think that you can rely upon the definition of the word project. And if you look at Miriam Webster's definition, also the Oxford Dictionary definition that was pointed out by the Court, it refers to the entire undertaking and it also refers specifically to the design and plans. The project encompasses the workers, the plans, the agreement, the lease. At the time that Amendment No. 1 was added, the project as it then existed provided that the physical security requirements applied on a per space basis. That's your authority. That's your support. Dictionary definition. It is the support. And we think that when, because what the implication is with respect to Amendment No. 1 is that in two sentences the government undertook a wholesale rewriting of the entire agreement. When you look at, by interpreting Amendment No. 1 as indicating that the security requirements apply on a building scale, it rewrites, it excises 4.2.7 from the agreement almost in its entirety and gets rid, jettisons the per space requirements. What about the argument that those seven particular interior rooms had other specific security requirements above the level two requirement? Well, I think that the government is free in the contract to delineate what specific security requirements are there for each of the rooms. Now, in the physical security requirement, and for the whole facility and the project, if that's what the government decided to do, but it has to be clear and unambiguous in how it goes about that. And we disagree with the trial court's conclusion where it says that, you know, look, if you look at the tables, they don't have anything to do with the interagency security standards. In fact, there's substantial overlap in the requirements that were put in those tables with respect to keys, closed security, bulletproof glass, all those things that overlap. And there was certainly nothing there to put my client on notice that these, you know, that there was somehow an issue that raised the duty for my client to inquire further. Now, I would note that in Section 6 of the agreement, it constitutes 51 pages of standards delineating what the exact details are for the construction of the windows, the doorways, the blast loads, or the loads for the floors and the roof. And if we interpret Amendment Number 1 to apply the interagency security criteria to the entire building, then we're rendering that Section 6 almost meaningless and undertaking a serious rewriting of the agreement. Amendment Number 1 is a two-sentence amendment. And if you look at the actions of the Veterans Administration in handling this project, it is entirely consistent with our position that there is a latent ambiguity in the project because it took over 18 months before anybody at the Veterans Administration raised the issue of the interagency security standards applying on a building-wide basis. And when they did that— The Court of Claims found Amendment 1 unambiguous, right? That's correct. And you're arguing instead that it's not a patent ambiguity. You're arguing for an ambiguity that's not just patent. It has to be latent, right? That's correct. You know, if I understand correctly, if it were a patent ambiguity, then you would have had a duty to inquire? That's correct, yes. And I think that, you know, at a bare minimum, as we noted in our briefs, that the trial court provides a framework for the resolution of this matter. We agree with what the trial court concluded, that Section 4.2.7 is latently ambiguous at a bare minimum. Throughout this section, there's not less than five references to a per-space requirement in that section. You start out with the first sentence that indicates that the security requirements apply to on a per-space basis. It says that the lessor shall provide the following security measures for the features for the spaces or area as listed below. The section then notes in the middle. It says the government will designate a security level from level 1 to level 4 for each space requirement. It then later provides that the contracting officer will provide the security level designation, again, as part of the space requirement. And then consistent with that, the section provides a table that delineates seven particular spaces and the security requirements for ---- will be a level 3 security requirement. It talks about space of the entire facility, doesn't it? It does in general terms, but I don't think that that can override the fact that the section in multiple spaces refers to a per-space requirement. I count five references. That solicitation also advises bidders to consult an exterior government website, doesn't it? It does, and we submit that that website certainly wasn't sufficient to put us on notice. There's no record evidence that those physical security standards, the interagency security standards, were in fact even available on that website. And it turned out, in fact, that they were not available for the public. They had to be specifically requested. If you look at the appendix, at the correspondence between the parties ---- Did you remember correctly that your client didn't look at them until after the contract had been entered into? And hadn't requested them? We didn't request them until the VA brought the issue up 18 months into the project. After the VA had reviewed our design, had proceeded along without any ---- We've been going along without any reference to the interagency security standards whatsoever. And then the VA raises the issue, and then we go and attempt to access these documents and find out that, in fact, they're not even available. We don't even know at this point what these documents are exactly. When your client signed the contract and was directed to review the website, it could have done it at that moment, right? It could have. And you don't know whether the website was available to the general public at that time, do you? There's no record evidence in the record at all as to whether or not it was available. What we found out when we did attempt to obtain it was that it was not, in fact, accessible to the public. And I note that in the appendix, when we requested copies of the documents, we went to two places. We went to the interagency security commission, and then we eventually ---- and they said, you know, when we finally got those URLs, those URLs, the web links, were entirely different from the ones that were referenced in the contract. So I think that's a strong indication as to the uncertainty here as to what exactly applied to this project. And that was demonstrated by, you know, the actions of the resident engineer. Here's an individual who has been with the project for years. He works for the VA, and even he doesn't know that the interagency security standards apply. He didn't bring it up until March 2010. Then he brings it up, but then reverses himself and says, no, don't worry about that. Let's take a look at some separate VA design standards. And then finally, in July 2010, he indicates, no, you need to follow the interagency security standards. And I'll note that that came over two years after the ---- that came over two years after amendment number one had been entered. So we think here that at a bare minimum, the amendment number one doesn't resolve the ultimate latent ambiguity in this agreement, and that is whether or not these security standards apply to the entire building or to specific spaces. And ---- Was there any change in the security actually provided after amendment number one was made? Well, after amendment number one was made and after the government finally raised this issue and insisted that we comply with the interagency security standards, the building, the entire building, was constructed using those security requirements. And that's why we're here today, because in essence, foisted about a million dollars of extra cost on to my clients. All incurred before amendment number one? No, this was incurred after amendment number one. Amendment number one was entered into, I think was added to the agreement in June of 2008. And ---- Do I remember correctly that it was added to the agreement and your client signed off on it? Do I remember that? It was, yes, it was added to the agreement and ---- Was it before the, it was added to the solicitation or added to the agreement? It was added, I believe, to the agreement as a whole. So the agreement constitutes the solicitation, then our design plans, and then I believe there were some clarifications that were added that included this amendment. And, you know, as I mentioned, as we mentioned in the brief, there's nothing in this amendment calling out saying that we're going to be changing the security standards from a per space basis to a per building basis. In fact, the first sentence of that amendment, what it says is that the ---- It's your view that the agreement was not ambiguous at all, and it unambiguously was providing for just space requirements for security. I think our ---- I mean, it feels like I have to agree with you on that in order to follow your argument that you're making. Because if I think, like the court below did, that it was a latent ambiguity, meaning that, you know, it could have been read one way or the other, then I might think that Article I clarifies that, or Amendment I clarifies that. Well, I think you're correct in that, you know, our initial position was that this was unambiguous. I think that, you know, what we're reacting to is the fact that in application and how the VA ultimately viewed it themselves, it turned out that there was an ambiguity because the VA was looking at the ---- clearly looking at that section very differently ultimately and concluding that security requirements apply on a per building basis. Okay. Thank you. Let's hear from the government. Thank you, Your Honor. Before you get started, this is what concerns me. Apparently there was no objection to the rate of security that was being provided throughout. The only objection is now to pay for it. I'm sorry. I didn't understand the question. Maybe I didn't hear you. Could you please repeat that, Your Honor? I really tried to understand just what the issue is. The security was provided at a rate that you now say was unnecessary and was not provided for in the contract or apparently even in Amendment I, but it wasn't objected to throughout the period of construction. The only objection is now raised when you get a bill for it. No, Your Honor, that's not true. Actually, to the extent that my colleague was referring to 18 months without mention of this problem, actually the VA brought the fact that the contractor had not complied with the ISC standards to Premier's attention in connection with the first design development submittal. So this was brought to the contractor's attention immediately, divorced from any bill. With instructions to terminate the extra security? No, Your Honor. Excuse me, Your Honor? You required them to add more security. Yes, Your Honor, we were requiring them to add additional security. And they're complaining about it? Yes, Your Honor. Having to pay for it. That's correct. The contractor in this case effectively has taken the position that no, the interagency security standards, committee standards, did not apply, constituted extra contract work that they should not have provided for in their original bid. And so they are seeking the difference in cost to them at having to provide what they view to be extra security. But according to the plain terms of the contract, it's absolutely core contract work. I'd like to clarify some of the comments that were made. I have a question for you. You say on page 7, footnote 3 of the red brief, that the interagency security committee standards, the ISC standards, are not classified. Are they FOUO for official use only? Yes, they are for official use only. They're not classified. Are they accessible under FOUO? Yes, Your Honor. But as indicated in the record, they did require some, it looks like at the time that Premier made the inquiry, and Premier didn't explore what was or wasn't available on the website at the time that it did, but at the time that it made its initial inquiry, certainly it required the intervention of the resident engineer as a government official to get the standards for them. When you refer to the website in your answer you just gave, are you referring to the website that's referred to in subsection 4.2.7.1? Yes, Your Honor. The contract specifically provides that a copy of the government security standards is available at www.oca.gov. And that's the website that we know this contractor did not access. So that there's no confusion in the timeline, I'd like to address this. Amendment 1 was not added to the agreement. Amendment 1 was an amendment to the solicitation. It was issued on June 10, 2008. Award of this contract, the award date's on appendix page 46. The award date was November 12, 2008. So Premier had Amendment 1 to the solicitation well in hand before it submitted its bid, and according to the lease itself, the solicitation and all amendments was made part of the lease, attached and made a part hereof is the words used in the lease. So Amendment 1 was fully operative to address the clarification that was needed to the underlying section 4.2.7. The contract as a whole takes the underlying language of 4.2.7, which the court recognized, appendix 93, refers to both facilities and agency space requirements, also refers to a single-use building receiving a single-level physical security requirement. Amendment 1 simply circles back and clarifies that the project requires level 2 security. And I think that where we, to the extent that we start talking about potential ambiguities here, I mean the contractor's interpretation bears noting in this case, even if the court were to construe any of this as ambiguous, which we don't think it is, in light of the contract as a whole, the contractor is still trying to push an interpretation that says that the project doesn't get any ISC standards physical security in the face of clear contract language that says just the opposite. Are you also relying on the language following in Amendment 1 that refers to, based on a size of 2,500 to 80,000 rentable square feet? That's right, Your Honor. I'm referring to sort of a large size, not individual tiny room requirements. So, I mean, I think the bottom line is that one can't construe the project as really meaning a subset or a small set of subsets of the project. You've got to take, give that word its ordinary meaning and also construe it in light of the contract as a whole. Is there anything in the record which indicates, either yea or nay, that your resident engineer had ready access to the security website, security standards website? There's nothing in the record one way or the other. It looks like that once the, and that wasn't something that Because your opposing counsel said, oh, when we asked him, he then couldn't get access. No, he wrote to the ISC Standards Authority and obtained a copy for them. I mean, that's good government cooperation. But in terms of the website link itself, I want to clarify something. I mean, I think that my colleague mentioned that there were URLs on the standards that were different. Right. Those, I don't see those in the record, so I'm not sure that was really part of what the trial court would have been looking at. But it's beside the point. It should be, Your Honor. I mean, this court's authority is clear that a contract is insofar as Well, it's beside the point because a printed document which references a URL doesn't mean that that is the sole URL or that the same document is obtainable in another URL. It's just not proof. That's correct, Your Honor. And at base, I think we're left with a situation where the contractor had a duty to, when cautioned that the government security standards were available on an external website, should have looked at that website. And also, when the contractor is presented with Amendment No. 1 that advises that ISC standards apply to the project, it would certainly, it's certainly incumbent on the contractor to seek those out and make sure they're appropriately applied. If it's going to bid, yes. Yes, Your Honor. So for all the reasons we've discussed at oral argument today and set forth in our briefs, we respectfully request that the Court affirm the trial court's grand summary judgment in the government's favor. Thank you. Mr. George, your turn. I think that the point we'd like to end with is that even if my clients did have access to the interagency security standards and had the benefit of that, even if you interpret Amendment No. 1 as applying those standards at least in part to the agreement, again, it doesn't resolve the ambiguity that we ultimately have here as to whether or not the security standards apply on a per space basis. And I think that you have to look back to 4.2.7 because there was reference to the Level 3 being selected as the security level at the end of 4.2.7. But that comes after several sentences as to where it says that the government will designate the level for each space requirement. And so that you have to read those two together that ultimately what's happening there is that the government's making its selection for the space requirements. And as we mentioned... Which is Level 3. Which was Level 3 to apply to those particular spaces delineated in the agreement. And the project. And to the project, which we maintain as references the lease agreement and the plans. Okay. I understand your argument. Okay. Thank you. Thank you. Thank you both. The case is taken into submission.